APPEAL OF HOWARD K. WALTER ET AL., EXECUTORS OF THE ESTATE OF GEORGE L. WALTER, DECEASED.

Docket No. 1782. Submitted April 9, 1925. Decided September 7, 1925.

Evidence of the value of property owned by the decedent must be of the date of the decedent's death for the purpose of the estate tax.

*Held* on the evidence that the value determined by the Commissioner of certain shares of stock in the Farmers & Merchants Bank of Sharpsburg, Pa., as of the date of the decedent's death is correct.

The amount of a charitable bequest deductible under the Federal estate tax law can not be reduced by a tax paid to the Commonwealth of Pennsylvania.

*R. Lester Moore, Esq.*, for the taxpayer.
*L. C. Mitchell, Esq.*, for the Commissioner.

Before IVINS, MARQUETTE, and MORRIS.

This appeal is from the determination of a deficiency in estate taxes in the amount of $2,113.75. The questions involved are the values, at the date of death, of the decedent's interest in certain lots, and of certain shares of bank stock, and whether the deduction for certain charitable and public bequests should be reduced by $10,000 paid to the Commonwealth of Pennsylvania. From a stipulation, documentary evidence, and testimony taken at the hearing the Board makes the following

FINDINGS OF FACT.

1. The taxpayer is the estate of George L. Walter, formerly a resident of Pittsburgh, Pa., who died November 11, 1922. The executors are Herman G. Woerner, Charles C. Brenner, and Howard K. Walter, residents of Allegheny County, Pa.

2. On October 6, 1917, George L. Walter, having purchased lots Nos. 5, 48, 49, 53, 55, 58, 59, 133, 134, 206, 207, 208, 232, 272, 273, 274, 275, 276, 277, 368, 369, one-half of lot 278, 76, 77, 85, 215, 294,

and 298, in the borough of Aspinwall, Allegheny County, Pa., for $15,835.20, entered into an agreement with Fred W. Pilgram and Charles C. Brenner which provides that title to the said lots was held by him for the benefit of the parties to the agreement and that the net profits and losses accruing from the sale of the lots were to be distributed in the following proportions: Walter, one-half; Pilgram and Brenner, one-fourth each. Prior to his death Walter was reimbursed from the sales of the property for all money advanced by him. At the date of his death 13 lots remained unsold. Later, upon the sale of one of these lots, the attorney for the purchaser in examining the title discovered that it stood in the name of the decedent. In order to get acquittance from the lien for state inheritance taxes, it became necessary to have the properties valued and to pay an inheritance tax of $127.20, representing a valuation of $6,360. The lots in question, as assessed and listed for sale, were as follows:

| No. | Location | Assessed value | Sale Price |
|---|---|---|---|
| 5 | Delifield Avenue | $1,000 | $1,100 |
| 206 | Emerson Avenue | 690 | 800 |
| 207 | ____do____ | 700 | 800 |
| 232 | ____do____ | 1,000 | 1,200 |
| 233 | ____do____ | 1,000 | 1,200 |
| 275 | | | |
| 276 | ____do____ | 2,070 | 2,050 |
| 277 | | | |
| 278 | Emerson Avenue (one-half) | 1,310 | 2,000 |
| 268 | Maple Avenue | 850 | ____ |
| 269 | ____do____ | 1,025 | 2,000 |
| 76 | Lexington Avenue | 1,025 | 1,000 |
| 77 | ____do____ | 1,025 | 1,000 |
| | Total | 11,685 | 13,150 |
| | Half interest | 5,842.50 | 6,575 |

The following is a statement of account as of March 25, 1925, under the agreement of October 6, 1917:

| | | | |
|---|---|---|---|
| Cost of lots | $15,835.20 | Received from sale of lots | $24,814.60 |
| Expenses (general) | 193.10 | 3 lots (estimated value) | 2,400.00 |
| Commission | 842.50 | Estimated deficit | 1,272.81 |
| Taxes | 4,884.24 | | |
| Interest paid | 4,726.67 | | |
| Taxes 1925 (estimated) | 205.70 | | |
| | 28,487.41 | | 28,487.41 |

3. Included in the estate at the date of decedent's death were 150 shares of stock in the Farmers & Merchants Bank of Sharpsburg, Pa. This bank was organized in 1879 and has been in continuous operation since that time. Its balance sheets, net earnings, and dividends for the 5-year period from 1918 to 1922, during which time it had a paid-in capital stock of $100,000, divided into 2,000 shares of a $50 par value, are as follows:

| | Dec. 31, 1918 | Dec. 31, 1919 | Dec. 31, 1920 | Dec. 31, 1921 | Dec. 31, 1922 |
|---|---|---|---|---|---|
| Real estate | $35,000.00 | $35,000.00 | $34,000.00 | $34,000.00 | $33,500.00 |
| Securities | 580,715.12 | 627,855.05 | 844,812.05 | 138,131.91 | 1,070,225.87 |
| Cash | 152,657.82 | 64,006.87 | 62,594.71 | 137,438.09 | 227,829.28 |
| Notes receivable | 622,968.85 | 763,065.12 | 1,044,830.22 | | 958,617.97 |
| Accounts receivable | 2,956.30 | 3,164.16 | | | |
| Mortgages | 65,925.85 | 105,877.96 | 131,461.44 | | |
| Due from banks | | 88,820.09 | 100,835.65 | | |
| Loans and investments | | | | 1,807,881.08 | |
| Total | 1,460,223.94 | 1,687,700.25 | 2,218,534.07 | 2,117,451.08 | 2,290,173.12 |
| Accounts payable | 1,193,596.83 | | 1,931,009.26 | 1,802,021.97 | ¹1,952,085.84 |
| Other liabilities | 5,396.46 | 968.00 | 920.00 | 1,030.00 | 1,074.72 |
| Capital stock | 100,000.00 | 100,000.00 | 100,000.00 | { ¹20,000.00 / 100,000.00 | 100,000.00 |
| Surplus | 100,000.00 | 150,000.00 | 150,000.00 | 150,000.00 | 150,000.00 |
| Profit and loss | 61,230.66 | 19,940.47 | 36,604.81 | 44,399.11 | 87,012.56 |
| Deposits | | 1,415,321.84 | | | |
| Outstanding checks | | 1,469.94 | | | |
| Total | 1,460,223.94 | 1,687,700.25 | 2,218,534.07 | 2,117,451.08 | 2,290,173.12 |
| Net earnings | 27,857.33 | 27,112.44 | 32,078.53 | 46,185.94 | 40,613.45 |
| Dividends____per cent | 10 | 12 | 15 | 18 | 18 |

¹ Secu.

For the purpose of the capital-stock tax for the year 1922 the bank reported a fair market value of $173.85 for its stock. During May, 1922, Harry S. Calvert, of Pittsburgh, Pa., sold 50 shares of the stock of this bank at $132 per share.

4. The decedent made bequests to charities of $115,000 upon $100,000 of which the estate paid $10,000 to the Commonwealth of Pennsylvania under the Pennsylvania inheritance tax law, the legatees thus receiving $105,000.

5. The taxpayer returned no value for the decedent's half interest in the 13 lots, valued the 150 shares of stock of the Farmers & Merchants Bank at $19,500, and took as a deduction $115,000 as charitable bequests. The Commissioner determined the value of the decedent's half interest in the 13 lots at the date of death to be $3,180, the value of the bank stock to be $170 per share, or a total of $25,500, and reduced the deduction for charitable bequests to $105,000. From these adjustments the Commissioner determined the above deficiency from which determination this appeal is taken.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 10 days' notice, under Rule 50.

### OPINION.

MORRIS: The only evidence introduced by the taxpayer to substantiate his contention that the decedent's interest in the 13 lots at Aspinwall, Pa., was of no value, was a statement of account under the agreement of October 6, 1917, as of March 25, 1925, in which an

estimated deficit of $1,271.81 is shown. This statement, however, values the decedent's interest as of a date almost two and a half years after his death, and therefore can not be accepted as establishing the value of his interest in these lots at the date of death.

The evidence of an isolated sale in May, 1922, of 50 shares of the stock of the Farmers & Merchants Bank at $132 per share does not convince us that the value placed upon this stock by the taxpayer is correct. The sale took place six months prior to Walter's death, and the conditions under which it was made are unknown to us. The balance sheets, net earnings, and dividends for the 5-year period from 1918 to 1922 indicate that the net earnings over that period averaged $17 a share, that the earnings in 1921 and 1922 were $23 and $20 a share, respectively, and that the corporation had a surplus of $150,000. These facts, considered in conjunction with the valuation of $173.85 placed upon the stock by the bank itself, lead us to the conclusion that the stock had a value of at least $170 a share.

The Commissioner does not question the charitable nature of the bequests made by the decedent, but urges that the $10,000 tax paid thereon to the Commonwealth of Pennsylvania is not deductible under section 403 (a) (1) of the Revenue Act of 1921, thereby effecting a reduction by that amount of the charitable bequests. The taxpayer contends that charitable bequests of $115,000 were made, which amount is therefore deductible under section 403 (a) (3) of the above act, without diminution by the amount of the state tax. That section provides that for the purpose of the tax the value of the net estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes. There was considerable discussion by opposing counsel as to the nature of the collateral inheritance tax of Pennsylvania. Counsel for the taxpayer argued that it is an inheritance tax, and paid by the executor merely as a collecting agency, the effect of which is to reduce the bequest after it has reached the hands of the legatee. In our opinion, the solution of the present issue does not depend upon the nature of that tax, even though the question were an open one, which it is not. The Supreme Court of the United States in the recent decision of *Frick* v. *Pennsylvania*, 268 U. S. 473, decided June 1, 1925, held that the collateral inheritance tax of Pennsylvania is an estate tax. See also *Lederer* v. *Northern Trust Co.*, 262 Fed. 52, certiorari denied, 253 U. S. 487.

The Federal estate tax is levied on the value of the net estate which is determined by taking certain specific deductions from the value of the gross estate plus an exemption of $50,000. Among these deduc-

tions are charitable bequests. The tax is upon the transfer of his net estate by the decedent, and comes into existence before, and is independent of, the receipt of the property by the legatee. *Edwards* v. *Slocum*, 264 U. S. 61. That a state tax reduces the amount actually received by the legatee can not modify the specific deduction authorized by the Federal statute. The taxes of both the State and Federal Government depend upon the respective laws of each, and are not affected by the laws of the other. The power of Congress in levying taxes is not necessarily or naturally inconsistent with that of the States. Each may lay a tax on the same property without interfering with the action of the other. It is the intent of the Federal statute that charitable bequests shall not be taxed, and the courts have been liberal in construing statutes so as to encourage such bequests. The amount actually received by the legatee is not determinative of the amount of the deduction. *Edwards* v. *Slocum, supra.* In that case the decedent, after bequeathing specified sums, left the residue of her estate to charitable and educational institutions. The Commissioner reduced the charitable deductions by the amount of the Federal estate tax; or, in other words, added the amount of the tax to the taxable estate. The court stated that the position of the Government was contrary to the expressed intent of the statute to encourage charitable bequests, and held that the Revenue Act of 1918 imposing a tax on the transfer of net estate of decedents, defining a gross estate and specifying the deductions to determine the net estate, does not permit the amount of the tax to be included in the net estate on which the tax is figured, where the residue was given to charitable corporations.

In view of the specific deduction of charitable bequests authorized by the Revenue Act of 1921 we are of the opinion that $115,000 is deductible from the value of the gross estate in determining the value of the net estate.

ARUNDELL not participating.